STATE OF MISSOURI EX REL. VEIGH COCKRUM ET AL., RELATORS, v. HON. ALLEN C. SOUTHERN, JUDGE, ETC., ET AL., RESPONDENTS.—83 S. W. (2d) 162.

Kansas City Court of Appeals. April 1, 1935.

*Alpha N. Brown* for relators.

*Charno & Drummond* and *Warren A. Drummond* for respondents.

BLAND, J.—This is a proceeding wherein relators attempt to prohibit the Honorable Allen C. Southern, one of the judges of the Circuit Court of Jackson County and the Honorable Glenn Donaldson, a referee appointed by him, from proceeding further in a cause pending before said judge in which A. M. Dowell and J. M. Dowell, co-partners, doing business as Dowell Brothers, are plaintiffs and Veigh Cockrum, Hattie Cockrum and Beulah Cockrum, are defendants. Upon the filing of the petition for the writ in this court one of the judges thereof issued a preliminary rule. Respondents have made their return and relators have filed their motion for judgment on the pleadings.

The facts disclosed by the pleadings show that the respondent, Southern, after having entered a decree for an accounting in said cause appointed respondent, Donaldson, to take the same. After the entry of the decree relators filed motions for a new trial and in arrest of judgment, which were overruled. While these motions were pending the referee served notices of hearings and fixed the date for the same to commence at a time prior to the time the motions for a new trial and in arrest of judgment were ruled upon by the court. The motions were disposed of adversely to relators whereupon the referee commenced hearings pursuant to said notices. At this stage of the proceedings this application for a writ of prohibition was made. Relators filed, in the trial court, a demurrer to the petition, which was overruled, also a motion to make the petition more definite and certain, which was likewise overruled. The grounds for the demurrer were that the petition failed to state facts sufficient to constitute an action in equity against the defendants and that several causes of action were improperly united in the petition. The petition reads as follows:

"Plaintiffs for their amended cause of action, leave to file this amended petition having heretofore been granted by the court, state that now and at all the times herein mentioned, Veigh Cockrum has been conducting a general warehouse, drayage and merchandise distributing business under the style of Aaron Transfer Company in Kansas City, Missouri, and has in his charge a certain warehouse building located at 504 West Fifth Street in Kansas City, Missouri; that Kaw Valley Corporation is a Missouri Corporation but that the said Veigh Cockrum in reality and truth is the true owner of all the stock and assets thereof, and that Kaw Valley Corporation has duly made Veigh Cockrum its attorney in fact to transact all its busi-

ness and to sign all papers and execute all contracts in its behalf, and that no officer or director thereof has any authority to sign or execute any paper or transact any business on its behalf.

"The plaintiffs are co-partners and for many years have operated and conducted their business of shipping cotton, with chief place of business in McKinney, Texas.

"That on or about March 15, 1932, plaintiffs entered into an agency contract with defendant Veigh Cockrum, by the terms of which Veigh Cockrum promised and agreed to act as agent of plaintiffs in the same and distribution of cotton and cotton linters. That by the terms of said agreement plaintiffs were to deliver cotton and cotton linters to Veigh Cockrum at points in Oklahoma and Texas and Cockrum should transport same or cause it to be transported to Cockrum's said warehouse, and that thereafter Cockrum would sell same and thereupon transport same to the purchasers thereof and Cockrum would thereafter collect the purchase price thereof and immediately remit the proceeds to plaintiffs, after deducting his fees, commissions and charges for said services. And Cockrum agreed to inform plain-at all times of the names of the purchasers of said cotton and linters and how much had been shipped to such purchasers, and the status of the accounts of such purchasers, and the amount of the stock of such cotton and linters on hand in such warehouse. That this is the only agreement or contract ever made or entered into between plaintiffs and defendants.

"That thereafter plaintiffs delivered many bales of cotton and linters to said Cockrum and caused many hundreds of bales thereof to be sent to said warehouse. That Cockrum sold and distributed a portion of said cotton and linters and collected the purchase price of same but that said Cockrum has remitted to plaintiffs only a portion of the amounts so collected and has fraudulently converted and appropriated to his own use the proceeds thereof and refuses to turn over same to plaintiffs.

"That Cockrum has some of said cotton and linters on hand in his said warehouse, but plaintiffs have no knowledge of the amount thereof.

"That Cockrum refuses to account to plaintiffs for any part of said cotton or linters. That plaintiffs have no knowledge of the names of the parties who have purchased any of said cotton or linters and who are indebted yet for same. That if Cockrum collects any of said outstanding accounts he will convert the proceeds thereof to his own use and secrete same where plaintiffs cannot locate same.

"That plaintiffs have requested an accounting of their said business relations with Cockrum and he fails and refuses to render any accounting to them.

"That plaintiffs have no plain, adequate or complete remedy at law.

"That Kaw Valley Corporation and Veigh Cockrum, as its attorney in fact, claim some interest in said cotton and linters and said outstanding accounts and indebtedness, the source of which claim plaintiffs have no knowledge; that plaintiffs have never had any business dealings with Kaw Valley Corporation to their knowledge. That defendant, Hattie Cockrum claims to be the owner of all the assets of the Kaw Valley Corporation and claims to be doing business as a sole trader, under the name and style of Kaw Valley Corporation, and claims to have some interest in said cotton and cotton linters herein; that Beulah Cockrum claims some interest in Aaron Transfer Company and the subject-matter of this action, the extent and character of which is unknown to plaintiffs; that all of said defendants are insolvent and a money judgment cannot be collected against them.

"Wherefore, plaintiffs pray for an injunction restraining defendants from moving or disposing of any cotton now in their possession by virtue of the said relations between plaintiffs and Veigh Cockrum; that defendants be restrained from collecting and receiving payment for any of said cotton or linters now unpaid; and that they be restrained from endorsing and cashing any checks or drafts in payment of any of said cotton; that defendants may be compelled to account to plaintiffs for any and all of such cotton or linters and to furnish names of'purchasers thereof, with amounts paid and unpaid; and that plaintiffs recover judgment for any amounts found to be due and owing them from defendants by reason of the'premises, and for such other and further relief that may seem just and proper and for'their costs.''

It is urged that the petition does not state a cause of action in equity for the reason that it is claimed that'it shows on its face that plaintiffs have an adequate remedy at law and, if any cause of action is stated, it is an action at law. In support of this contention relators, among other authorities, cite the cases of Dahlberg v. Fisse, 40 S. W. (2d) 606; Palmer v. Marshall, 24 S. W. (2d) 229, and Sandwich Mfg. Co. v. Bogie, 298 S. W. 56.

We are unable to agree with the contention of the relators. The petition undoubtedly discloses that plaintiffs have a cause of action against the relator, Veigh Cockrum, for an equitable accounting. While the mere relationship of principal and agent affords no ground for an equitable accounting (2 C. J., p. 888), under the allegations of the petition it is apparent that the relationship between plaintiffs and defendant, Veigh Cockrum, was more than a mere agency but was that of principals and factor. It is well settled that such a relationship is a fiduciary one and constitutes the factor a *quasi*-trustee for the principal and a suit in equity against the factor for an ac-

counting may be brought when the facts warrant a suit for an accounting. [25 C. J., pp. 342, 400; Deming v. Webb, 76 Mo. App. 329; Foley v. Hill, Eng. Repts. Full Reprint, 1002, 1005; Jordan v. Underhill, 86 N. Y. S. 620; Coffin v. Craig, 89 Minn. 226; Morris & Co. v. Whitley, 183 Fed. 764; Phillips v. Birmingham Ind. Co., 161 Ala. 509; Hall v. McKeller, 155 Ala. 508; Graham v. Graham, 171 Mich. 307.]

Equitable jurisdiction over matters of account is said to be based upon three grounds, to-wit: The need of a discovery, the complicated character of the accounts and the existence of a fiduciary or trust relationship. Neither the need of discovery or the complicated character of the accounts, alone, constitute ground for equitable relief in this State. [Vogelsong v. Wood Fibre Plaster Co., 147 Mo. App. 578; Johnston v. Pump Co., 274 Mo. 414, 423.] However, the existence of a fiduciary or trust relation is a basis of equitable jurisdiction in this State. [Frost v. Redford, 54 Mo. App. 345, 354. See, also, 25 C. J., p. 400; 1 C. J., p. 621.] ''Courts of equity have jurisdiction to compel an accounting, although the complainant has an adequate remedy at law where fiduciary relations exist'' (1 R. C. L., p. 224; 1 C. J., pp. 614, 621); ''and it is no objection that the action at law sounding in damages may be brought for the breach; the legal and equitable remedies are concurrent, and complainant has his election. It must, however, appear that an accounting is necessary to determine the amount due, and that the party called to account has been intrusted with property of plaintiff, and is bound to show his dealings with it.'' [1 C. J., p. 623; 2 C. J., p. 889.] The matter is well expressed in the case of Marvin v. Brooks, 94 N. Y. 71, 79, 80, as follows: ''The best considered review of the authorities puts the equitable jurisdiction upon three grounds, viz.: The complicated character of the accounts; the need of a discovery, and the existence of a fiduciary or trust relation. [1 Story's Eq. Jur., par. 459, and note 5.] The necessity for a resort to equity for the first two reasons is now very slight, if it can be said to exist at all, since a court of law can send to a referee a long account, too complicated for the handling of a jury, and furnishes by an examination of the adverse party before trial, and the production and deposit of books and papers, almost as complete a means of discovery as could be furnished by a court of equity. But the jurisdiction of the latter court over trusts and those fiduciary relations which partake of that character remains, and in such cases the right to an accounting seems well established. But the existence of a bare agency is not sufficient. If it was, it would draw into equity every case of bailment in which an account existed.

''In Moxon v. Bright, supra, it was said that there are 'numerous cases showing that where the relation of principal and agent has imposed a trust upon the agent, the court would entertain a bill for

an accounting, and the only difficulty was in determining what constituted this species of trust.' In Foley v. Hill, supra, the question arose over that sort of relation which exists as between a banker and his depositor, and it was held to be merely that of debtor and creditor. The court added, however, that as between principal and factor the equitable jurisdiction attached, because the latter partook of the character of a trustee, and that 'so it is with regard to an agent dealing with any property . . . and though he is not a trustee according to the strict technical meaning of the word he is *quasi* a trustee for that particular transaction,' and, therefore, equity has jurisdiction.''

The facts in the case of Dahlberg v. Fisse, supra, are entirely unlike those in the case at bar. In that case it was said, l. c. 609: ''That in an action of account at common law the petition should pray for a money judgment but need not ask that an account be taken; that the judgment in such an action is that defendant do account and judgment after the account for the balance found due. But in the action for an accounting in equity the relief given is an accounting and a judgment for the balance found due on taking the account.'' The court said, l. c. 610: ''Curry sued Dahlberg for a definite amount of money; knew the claims settled upon which he bases that amount; stated them in an exhibit attached to the petition; stated the aggregate amount of the compensation received by Dahlberg for selling them; stated that this was partly in cash and partly in securities, but claimed he was entitled to twenty per cent on the aggregate amount of claims settled as though the securities were accepted for the amount which he says Dahlberg received. If the securities were worth less than this amount, and Curry was entitled to his proportion only of their actual value, that was a matter of defense to be set up by Dahlberg. Curry would not be prejudiced if he did not make this defense. Where a contract for a share in profits of a transaction is only a mode of determining compensation for labor, and no money is invested in such transaction, the remedy is by an action *in assumpsit*. [1 C. J. 604, par. 12.] This is the situation set out here. It is clearly not an action for partition of the securities in kind. Nor are the securities alleged to have any special or peculiar value which cannot be compensated for in money.''

In the case of Palmer v. Marshall, supra, there was no fiduciary relationship between the plaintiff and the appealing defendants and, in fact, there was no basis for an accounting between plaintiff and said defendants, either in law or in equity. In the case of Sandwich Mfg. Co. v. Bogie, supra, the court, among other things, passed upon the character of a demand filed against an estate in the probate court and whether the original demand, before its amendment, stated a

cause of action for an accounting in equity or for one of account at law, the court, 1. c. 60, quoted approvingly from 1 C. J., p. 602, as follows:

"The declaration in the action of account is in form somewhat like a bill in equity, for an accounting; but unlike such bill, it does not ask that an account be taken but concludes as all declarations of law, demanding damages."

The original claim asked judgment against the estate in the sum of $30,465.45. The court said 1. c. 60: "It is clear to our mind that the original claim filed in the probate court contemplated an accounting, and a judgment for what might be found due claimant upon such accounting. It is alleged that there is due the sum of $30,465.45. The petition is perhaps not as accurately drawn as would be one in the old common-law action of account, but it contains the essential elements of it."

The court did not hold that a suit in equity for an accounting could not have been brought upon the facts disclosed in that case, but merely that the petition was not brought upon the theory that an equitable accounting was being sought. In the case at bar there was no judgment requested for damages or any stated sum of money but plaintiff sought to recover any amount of money found to be due. When a complaint sets forth facts sufficient to support a cause in equity or one at law, the character of the action is determined by the relief sought in the complaint. [Wollums v. Mutual Ben. Health & Accident Ass'n, 46 S. W. (2d) 259, 264.]

The petition is attacked upon the ground, in effect, that it contains inconsistent allegations, that it is vague, indefinite, uncertain and incomplete. However, whether a petition is subject to a demurrer or a motion to make it more definite and certain in the circuit court cannot be tested by a proceeding in prohibition. [State ex rel. v. McQuillin, 256 Mo. 693; State ex rel. v. Stobie, 194 Mo. 14; State v. Hartman, 221 Mo. App. 215, 226; State ex rel. v. Riley, 276 S. W. 884.]

Prohibition raises a question of jurisdiction, only, and even though the relators' demurrer to the petition was overruled and their motion to make the petition more definite and certain "by requiring plaintiffs to state the amount of said cotton claimed by them to have been shipped to relators," was likewise overruled, still, if the amended petition required further amendment and could have been amended so as to confer jurisdiction upon the court, then, prohibition is not proper. [State ex rel. v. McQuillin, supra, 1. c. 705.] Unless the petition states no cause of action whatever and it appears that none can be stated prohibition is not the remedy. [Dahlberg v. Fisse, supra, 1. c. 610.]

The petition may not be technically perfect but it is apparent from its allegations that plaintiffs are seeking to hold Veigh Cockrum as their factor in the sale of cotton and cotton linters under a contract entered into between them wherein plaintiffs agreed to deliver to the said Cockrum cotton and linters to be held in his warehouse in Kansas City for sale by him upon commission. Said Cockrum agreed to inform plaintiffs the names of the purchasers of the cotton and linters, how much had been shipped to such purchasers and the status of their accounts and the amount of cotton and linters on hand in the warehouse. A large amount of cotton and linters were delivered to said Cockrum of which he has sold a portion, collected the purchase price but has failed to remit to plaintiffs all of the money that was due them, but has converted and appropriated the same to his own use and refuses to turn over same to plaintiffs; that the said Cockrum still has cotton and linters on hand in his said warehouse and plaintiff's have no knowledge of the amount thereof; that said Cockrum refuses to account to plaintiffs for any part of said cotton and linters and that plaintiffs have no knowledge of the names of the parties who have purchased any of the cotton or linters and who have not yet paid for the same; that although an accounting had been requested by plaintiffs said Cockrum has failed and refused to render the same; that defendants are insolvent. The petition is certainly sufficient to show that plaintiffs have a cause of action against said Cockrum for an equitable accounting.

In their brief relators intimate that the petition fails to state any cause of action against the relators, Hattie Cockrum and Beulah Cockrum, and that there is an improper joinder of causes of action in the petition. However, no such issue is raised by the pleadings in the prohibition proceeding. The only ground relating to the matter of the lower court lacking jurisdiction over relators, Hattie or Beulah Cockrum, is that relator Hattie Cockrum, has filed in the cause an answer and counterclaim for damages, which counterclaim is an action at law.

The answer and counterclaim of the said Hattie Cockrum allege that she was doing business under the name of the Kaw Valley Corporation; that she was to handle cotton and cotton linters shipped by plaintiffs to the Aaron Transfer Company and stored in its warehouse; that she had sold certain cotton and that plaintiffs had failed to ship it and that she had become liable to the purchaser and prayed damages against plaintiffs in the amount of $456.36.

Of course said relator cannot deprive plaintiffs of their right to an equitable accounting, as against Veigh Cockrum, by filing a counterclaim based upon a legal demand. In view of this ruling it is unnecessary to pass upon the question as to whether Hattie Cockrum,

not having petitioned for the writ of prohibition separately but having joined in with the other defendants in applying for a writ on the theory that the court had no jurisdiction over any of the defendants, can now urge that the lower court does not have jurisdiction over plaintiffs' petition, because of a matter that affects her solely, that is, her counterclaim.

It appears that after the filing of the suit plaintiffs took the deposition of the defendant, Veigh Cockrum and, upon application were permitted to inspect the books and documents of said Cockrum; that no complaint has been lodged in the lower court that this was not in full compliance with the order of the court. Respondents in their return plead that, as a matter of fact, the order was not complied with; that they were not permitted to make a complete inspection of the records in relators' possession and deny that they have obtained complete information covering the matters which are the subject of the suit.

It is now claimed by relators that respondents have availed themselves of the legal remedies of discovery and that an equitable accounting is unnecessary; that plaintiffs have an adequate remedy at law. From what we have said there is no merit in this contention, even though full discovery had been obtained. The case is entirely unlike the case of Bennett v. Crane, 289 S. W. 26, cited by relators. In that case the court stated, l. c. 28: ''The facts alleged show the relation of debtor and creditor'' as between the parties. As we have before stated, the relationship between Veigh Cockrum and the relators is that of principals and factor. Of course, discovery is not a substitute for an accounting and, even, when full discovery has been made, plaintiff, in a suit of this kind, still has a right to an accounting. [1 C. J. 617; Ludlow v. Simons, 2 Am. Dec., pp. 291, 298.]

It is claimed that the referee had no jurisdiction to fix the date for the commencement of the hearings and to serve the notices thereof, until the motions to set aside the decree were overruled. In this connection defendants seem to be under the impression that the decree for an accounting was a final judgment. This is not true. It was merely interlocutory in its nature. [Boden v. Johnson, 23 S. W. (2d) 186.] There is no showing that the referee heard any testimony during the pendency of the motions for a new trial and in arrest of judgment that were filed by relators. It appears that the motions were overruled before the hearings actually commenced before the referee. The most that can be said in favor of relators' contention is that the action of the referee was premature and that it amounted to no more than a mere irregularity, which does not go to the question of jurisdiction. [State v. Falkenhainer, 15 S. W. (2d) 342.]

The decree in which the case was referred to the referee recites that

he was "to take and state a mutual account of all dealings and transactions between plaintiffs and defendants and all issues therein embraced." It is now claimed by relators that this constituted a roving commission of the referee to take testimony and render an accounting against all of the defendants without limitations, whether the transactions were within the scope of the pleadings or not. The taking of testimony has not been commenced and respondents, in their return, state that the referee intends to inquire into and hear evidence upon the issues, only, embraced within the amended petition. It, therefore, appears that it is not the intention of the referee to go outside of the issues made by the pleadings. For this reason, alone, the point will be ruled against relators. [State ex rel. v. Wurdeman, 304 Mo. 583.]

It is apparent that the preliminary rule was issued inadvisably and therefore, it is quashed. All concur.